## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ANGELA BRADY-WILLIAMS, | : | MOTION TO VACATE |
| Fed. Reg. No. 21996510, | : | 28 U.S.C. §2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:21-CR-39-MHC-JSA-1 |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:24-CV-850-MHC-JSA |

## <u>MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION</u>

Movant Angela Brady-Williams has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. §2255.  (Doc. 155).  Movant seeks to challenge the constitutionality of Movant's conviction and sentence following Movant's guilty plea in the Northern District of Georgia.

I.    <u>Procedural and Factual History</u>

    A.    <u>Facts</u>

Movant is the sole owner and proprietor of an I.T. consulting business.  (Doc. 157 ("Plea Tr.") at 20).  Movant's company did not have any W-2 or 1099 employees; instead, Movant hired foreign contractors from India and paid them exclusively through PayPal.  (*Id.*; Doc. 139 ("PSR") at ¶11).  Movant did not pay any family members or friends in the United States to perform contract work.  (Plea Tr. at 20).

For tax years 2014, 2015, 2016, and 2017, Movant authorized a tax preparer, Felicia Jackson, to prepare Movant's Form 1040 individual tax returns. (*Id.*). Movant did not provide Ms. Jackson with bank or PayPal statements; instead, Movant provided Ms. Jackson with the 1040 forms and Ms. Jackson based the tax returns solely on the information and documents provided by Movant. (PSR ¶14). After Ms. Jackson completed the tax returns for each of the four years, she reviewed those returns with Movant in person until Movant understood exactly what was contained therein. (*Id.* ¶15). For all of those years, Movant declared under penalty of perjury that Movant examined the returns filed electronically on her behalf and that they were true and accurate. (Plea Tr. at 20). In each year, however, Movant knowingly provided Ms. Jackson with false amounts of contract labor expenses, and for 2016 and 2017 she also provided false spreadsheets of contract labor amounts. (*Id.* at 20-21).

Movant's bank and PayPal accounts showed that the total contract labor expenses claimed on Movant's 2014, 2015, 2016, and 2017 returns were substantially inflated by over two million dollars.[1] (*Id.*; PSR ¶12). Consequently, the falsely inflated contract labor expenses increased Movant's total income as well as Movant's reported tax due and owing, and thus were material and important to

---

[1]    Specifically, the labor costs provided on Movant's tax returns exceeded the actual amounts in Movant's PayPal account by $614,515.20 in 2014, $448,751.07 in 2015, $537,949.89 in 2016, and $531,387.33 in 2017. (PSR ¶12).

the Internal Revenue Service ("IRS")'s evaluation of the accuracy of Movant's tax return. (Plea Tr. at 21).

B.    Procedural History

1.    *Pre-Plea Proceedings*

On January 27, 2021, a federal grand jury indicted Movant and charged her with four counts of filing false tax returns in violation of 26 U.S.C. §7206(1) for the years 2014, 2015, 2016, and 2017. (Doc. 1). During Movant's arraignment, the Court appointed Brian Mendelsohn of the Federal Defender Program to represent Movant, and on July 21, 2021, Carmen Brooks of the Federal Defender Program also entered an appearance on Movant's behalf. (Docs. 9, 16). The Court first set a trial date for March 1, 2022; however, that date was subsequently continued to the following dates: May 10, 2022; August 1, 2022; October 11, 2022; November 1, 2022; January 17, 2023; March 6, 2023; and March 7, 2023.[2] (Docs. 26, 28, 34, 36, 37, 38, 39, 40, 45).

Meanwhile, Gregory Timothy Bailey entered an appearance on Movant's behalf on July 22, 2022. (*See* Docket Entry dated 7/22/22). On December 27, 2022, Movant and Mr. Bailey met with the Government to discuss a plea agreement, during which the Government informed Movant of the applicable sentencing guidelines.

---

[2]    Some of these continuances were requested by one or both parties for various reasons, and some were granted because Movant fired several of her attorneys.

(Doc. 62-1 ¶¶28, 34).  Movant signed the plea agreement and the Court set a date for Movant to enter the plea on January 10, 2023.  (*Id.* ¶34; Docket Entry dated 1/3/23).  Two days before the scheduled plea hearing, however, Movant fired Mr. Bailey and hired Herald Alexander to represent her.  (Docs. 62, 63).  The Court subsequently granted Movant's request to continue the trial, and the new trial date was set for March 6, 2023.  (Docs. 62-3, 64, 77, 102, 104; Docket Entry dated 2/17/23).  When Movant requested another continuance because Movant had newly retained an expert witness, the Court granted the motion in part.  (Docket Entry dated 2/17/23; Doc. 82).  To that end, the Court only delayed the case by one day until March 7, 2023, based on the age of the case, the nearly decade-old matters in the indictment, and the six previous continuances.  (Docket Entry dated 2/17/2023; Doc. 82).

The trial nevertheless was continued one more time after U.S. District Judge J.P. Boulee recused from the case and it was reassigned to U.S. District Judge Mark H. Cohen.  (Docs. 94, 95, 104).  This time, the trial date was rescheduled to June 12, 2023.  (Doc. 102).  Three days before the date of trial, however, Movant fired Mr. Alexander and hired Abram Jack Fishman as counsel.  (Docs. 128, 129, 130).  Mr. Fishman negotiated a plea with the Government on Movant's behalf, which Movant signed on June 10, 2023.  (Doc. 130).

2.    *Plea Proceedings*

On June 12, 2023, while represented by Mr. Fishman,[3] Movant entered a guilty plea pursuant to a plea agreement to one count of filing a false tax return.[4] (Docs. 130, 130-1 ("Plea Agreement")).  Therein, the Government agreed that:  the Government would dismiss the other three counts in exchange for the plea [Plea Agreement ¶13]; Movant would receive a two-level offense adjustment for acceptance of responsibility [*Id.* ¶16]; and the Government would make no recommendation as to the amount of the fine to be imposed [*Id.* ¶19].  Movant agreed that the recommendations, stipulations, and guideline computations were not binding on the Court.  (*Id.* ¶27).  The plea agreement also contained an appellate and collateral waiver which provided that Movant waived the right to file an appeal and collaterally attack her conviction and sentence in any post-conviction motion – including a motion under §2255 – on any ground, except for an upward departure or variance from the guideline range or for ineffective assistance of counsel claims. (*Id.* ¶28).  During the plea colloquy and in the plea agreement, Movant affirmed that she had read the agreement in its entirety, carefully reviewed every part of it with

---

[3]    Mr. Alexander also was present at the plea hearing since the Court had not yet ruled on his motion to withdraw, but the Court granted that motion at the beginning of the hearing.  (Doc. 130; Doc. 157 ("Plea Tr.") at 3-5).

[4]    Specifically, Movant entered a plea to Count 3, which was for filing the 2016 false tax return.  (Plea Agreement ¶1; Doc. 1 at 2-3).

her attorney, understood the terms and conditions in the agreement and voluntarily agreed to them, and was fully satisfied with counsel's representation. (*Id.* at 15-16; *see generally* Doc. 157 ("Plea Tr.")).

Also during the plea colloquy, Movant stated under oath that: Movant understood the constitutional rights she was waiving by pleading guilty; Movant understood that she was entering a plea to filing a false tax return and the consequences thereof, including a potential maximum sentence of three years; the decision to plead guilty was not a result of threats, force, or promises other than those contained the agreement; Movant felt that she had sufficient time to think about and fully discuss the matter with counsel; Movant had conferred with counsel about how the sentencing guidelines might apply in her case; Movant understood that the Court would not be not bound by the Government's recommendation and had the authority to impose a sentence more or less severe than the sentencing guideline range; and that any such sentence would not be a basis to withdraw the guilty plea. (Plea Tr. at 9-12, 16-18, 21-22, 24, 26).

As part of the Government's summary of the plea agreement, the Government read the paragraph containing the waiver of Movant's appellate and collateral rights. (*Id.* at 15-16). The Court also went into great detail about the rights Movant was waiving in that paragraph of the agreement, after which Movant stated that she understood. (*Id.* at 24-26). The Government set forth the factual basis for the plea,

and Movant told the Court that she agreed with that summary and affirmed that she was, in fact, guilty of the offenses in the indictment to which she was entering a plea. (*Id.* at 19-22). After receiving confirmation from Mr. Fishman that after conferring with Movant he believed that Movant was knowingly, voluntarily, and intelligently waving her constitutional rights, the Court accepted Movant's guilty plea. (*Id.* at 18-19, 27-28).

On December 12, 2023, the Court sentenced Movant to thirty-three (33) months of imprisonment and $1,080,606.44 in restitution to the IRS. (Doc. 138). Movant did not file a direct appeal with the Eleventh Circuit.

Movant executed the instant *pro se* motion to vacate her sentence pursuant to §2255 on February 3, 2024. (Doc. 155). Therein, Movant raises one ground for relief, that Mr. Fishman provided ineffective assistance of counsel by coercing Movant into entering a guilty plea. (*Id.*). For the following reasons, **IT IS RECOMMENDED** that the instant §2255 motion be **DENIED**.

II.   <u>Standard of Review</u>

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming

one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (noting that although a movant is entitled to evidentiary hearing if relief is warranted by the facts he alleges, a hearing is not required if the record conclusively demonstrates that no relief is warranted). As discussed further below, Movant's §2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with her claim. Thus, no evidentiary hearing is required.

III.   Analysis

    A.   Ineffective Assistance Of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018); *see also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v.*

*Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Chandler v. United States*, No. 20-13521, 2022 WL 445762, at *2 (11th Cir. Feb. 14) (per curiam) (internal quotation marks and citations omitted), *cert. denied*, __ U.S. __, 143 S. Ct. 174 (2022); *see also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to

establish prejudice under *Strickland*."  *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted); *see also Chandler*, 2022 WL 445762, at *2 ("*Post hoc* assertions from a defendant about how he would have pleaded, but for his attorney's alleged deficiencies, are insufficient to allege an ineffective-assistance-of-counsel claim.").

    B.    <u>Movant's Ineffective Assistance Claim Is Belied By The Record.</u>

Movant argues that Mr. Fishman provided ineffective assistance of counsel and coerced Movant into entering a guilty plea to a charge for which Movant was innocent, because Mr. Fishman: was unprepared to proceed to trial in three days; would not seek a continuance because in his experience the court would not grant any such request on the eve of trial; and told Movant that if she did not enter a plea she would be found guilty and would receive a certain sentence of twelve years, whereas if Movant were to enter a plea the sentence would be much lower at up to three years.  In support of this argument, Movant presents her own affidavit which outlines Mr. Fishman's alleged coercive tactics.[5]  (*See generally* Doc. 168 ("Movant Decl.") at 17).  Movant's affidavit, however, directly contradicts Movant's sworn statements made during the plea colloquy.

---

[5]    Movant also provides the affidavit of Movant's friend Margaret Flowers, who testified that Movant was with her when Movant received Mr. Fishman's call about the plea, and heard the discussion between them.  (Doc. 168 at 20).

There is a strong presumption that statements made during the plea colloquy are true, and those sworn statements "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (stating that statements made during plea colloquy "are afforded great weight"); *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely[.]").  And where, as here, a movant's claim of ineffective assistance of counsel is in direct conflict with the movant's statements under oath, the movant has a strong burden to show that those sworn statements are false.  *Patel v. United States*, 252 F. App'x 970, 974-75 (11th Cir. 2007) (per curiam); *see also United States v. Frady*, 456 U.S. 152, 164, 166 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume that he stands fairly and finally convicted.").  Movant has not met this rigorous burden.

Setting aside that Movant herself chose to hire new counsel just three days before trial, more importantly, Movant also swore, in relevant part, that she was satisfied with her newly-hired counsel and that no one threatened or forced her to plead guilty, and her present after-the-fact self-serving affidavit to the contrary is insufficient to overcome the presumption of truth of these sworn statements.  *See Sanders v. United States*, No. 18-11807-A, 2018 WL 11303658, at *2 (11th Cir. Oct.

5, 2018) (finding movant claiming he was forced by counsel to plead guilty to offenses he did not commit did not overcome the strong presumption of the veracity of his statements under oath during the plea colloquy); *Lynch v. United States*, No. 16-16243-C, 2017 WL 4570524, at *11 (11th Cir. June 26, 2017) ("At the plea hearing, . . . Lynch affirmed under oath that the factual resume was true and correct and that the government could have proven the facts contained therein at trial, and that affirmation carries a strong presumption of veracity that cannot be overcome by Lynch's present self-serving statements to the contrary."); *United States v. Durham*, 172 F. App'x 261, 265-66 (11th Cir. 2006) (per curiam) (finding district court did not abuse its discretion in denying motion to withdraw guilty plea when movant claimed that attorney coerced him into entering the plea, because the court was permitted to attach a strong presumption of truth to movant's statement during the plea colloquy that the plea was not a product of coercion).

Even if Movant had overcome the presumption of truth, however, Movant still has not demonstrated that Mr. Fishman rendered ineffective assistance. Indeed, Mr. Fishman's advice was sound, that is, that Movant should take the plea to one charge for a maximum term of three years or potentially face a maximum of twelve years if convicted on all four charges after trial, and Movant does not, and cannot, show otherwise. Consequently, Movant's characterization of the information Mr. Fishman provided to Movant as "misrepresentations" is just plain wrong. Instead,

Mr. Fishman's advice constituted nothing other than reasonable, professional judgment, Movant relied on that judgment when deciding to enter the plea, and Movant cannot now argue that she was coerced into doing so because she feels buyer's remorse. *See, e.g., Connolly v. United States*, 568 F. App'x 770, 771 (11th Cir. 2014) (per curiam) (finding no ineffective assistance where movant claimed attorney made "threats" that he would receive a life sentence and never see his wife and child again if he did not plead guilty, because "[w]hen a defendant pleads guilty relying on his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel"); *Maldonado v. United States*, No. 6:07-cr-107-orl-28gkj, 2011 WL 13311824, at *5 (M.D. Fla. Oct. 6, 2011) (finding movant's guilty plea was not the product of improper coercion even though counsel advised movant that he would "most definitely be sentenced to life imprisonment" if he went to trial and lost, since the movant also affirmed that he knew the maximum penalty he faced and understood the consequences of the plea).

Likewise, Movant has failed to demonstrate prejudice. First, Movant's conclusory statements that had counsel not "coerced" her into entering a plea she would have proceeded to trial and maintained her innocence are woefully inadequate. *See, e.g., Roach*, 373 F. App'x at 985 ("[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*.") (citation omitted). Movant also cannot demonstrate that a decision to

go to trial would have been rational, as the evidence of Movant's guilt was overwhelming, since her own statements, her bank account, and her PayPal records all demonstrated that the contract labor expenses reported on Movant's tax returns greatly exceeded the amounts in her PayPal records. (*See* PSR ¶12). What's more, Movant received a sentence of less than three years of imprisonment, which is significantly less than Movant would have faced had she proceeded to trial with no plausible defense.[6]

Thus, Movant's sentencing exposure would have significantly increased after a trial since the Government would not have dismissed the other three counts against her. Accordingly, Movant has failed to show that a decision to forego the plea and proceed to trial would have been rational. *See Baker v. United States*, 847 F. App'x 761, 765 (11th Cir. 2021) (per curiam) (finding no prejudice where "[a]side from his belated, self-serving statements, Baker presented no evidence he would not have pleaded guilty but for his counsel's allegedly erroneous advice"); *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (per curiam) (finding movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where movant received the "exceptional benefit" of lowering his sentence); *see also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir.

---

[6]    As will be discussed further herein, other than Movant's conclusory statements, the only defense she appears to raise is that she is actually innocent, which she has not demonstrated.

2012) (per curiam) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").

C.    <u>Movant Has Not Demonstrated Actual Innocence.</u>

Throughout the §2255 motion and Movant's reply, Movant repetitively argues that she is actually innocent; however, Movant's argument is belied by the entire record. Indeed, an actual innocence claim is "exceedingly narrow in scope," and a movant must present "new reliable evidence" that she is factually innocent. *See Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021); *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012) (per curiam); *see also Banks v. United States*, 770 F. App'x 946, 948 (11th Cir. 2019) (per curiam) ("To show actual innocence, a movant must present new, reliable evidence that he is factually innocent of the crime of conviction."). Any such evidence normally consists of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 322-24 (1995). And significantly, "new" evidence that provides the basis of an actual innocence claim means evidence that was both "newly discovered" *and* not available while the criminal proceedings were pending. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (describing evidence of actual innocence as "newly discovered" evidence that

"could not reasonably have been presented to the state trier of facts"); *Woodruff v. Crockett*, No. 16-16845-H, 2017 WL 11680250, at *2 (11th Cir. Sept. 19, 2017) ("A claim of actual innocence is also required to contain newly discovered evidence that was not available at the time of trial."); *accord Cobb v. United States*, No. 22-13909, 2024 WL 470346, at *2, n.2 (11th Cir. Feb. 7, 2024) (per curiam). Significantly, "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S,. 518, 538 (2006). This case is not so extraordinary.

To that end, in support of the claim that Movant is actually innocent, Movant relies upon what she refers to as a "newly discovered affidavit" of Marion Harden, who claims to be responsible for preparing Movant's Excel spreadsheets in the years 2014-2017. (Doc. 168 at 23 ("Harden Aff.")).[7] According to Mr. Harden, in preparing for the tax returns for those years, Movant would log into the PayPal accounts, download full data dumps, and send the data to Harden. (*Id.*). Harden would then sift through the data and prepare a spreadsheet containing only a list of the contractors that were paid each year to send to Movant's tax preparer, Ms. Jackson. (*Id.*). Mr. Harden further claims that although he created and sent the Excel

---

[7] Interestingly, although the indictment was issued in 2021, there appears to be no mention whatsoever of Mr. Harden in the entire record until Movant submitted Harden's affidavit with Movant's reply. Moreover, it is unclear why Movant needed Mr. Harden's testimony to testify about Movant's own actions in preparing the tax returns.

files to Movant, Movant did not review and verify those spreadsheets; instead, the files immediately were sent to Ms. Jackson to prepare the tax returns. (*Id.*).

It bears repeating that Movant swore under oath that the opposite was true when Movant told the Court that she did, in fact, file a false and fraudulent tax return knowing that it had contained false information that was material, and agreed that she presented false spreadsheets with false and substantially inflated contract labor amounts to Ms. Jackson. Additionally, in each of those years Ms. Jackson reviewed the completed tax returns with Movant until Movant understood exactly what was contained therein, and on all four tax returns Movant declared under penalty of perjury that she examined the returns Ms. Jackson filed electronically on her behalf and that they were true and accurate.

Finally, despite Movant's dubious description of Mr. Harden's affidavit as "newly discovered," the testimony contained therein is not new; nor was the information unavailable to Movant at the time of her plea – as Mr. Harden describes *Movant*'s own actions – which Movant would have known when she entered a guilty plea and to which she herself could have testified but swore instead that she knowingly submitted false tax returns. Movant also by definition was aware of Mr. Harden's supposed role in this arrangement and—regardless of the availability of an affidavit (which would be hearsay in any event at trial)—there is no reason why Movant would not have been able to call Harden as a witness.

18

In light of the entire record, Movant has failed to show that she is actually innocent. *See Wright v. United States*, No. 16-15391-F, 2017 WL 3724992, at *1 (11th Cir. Feb. 1, 2017) (finding movant did not show actual innocence of possession of stolen firearm conviction where movant presented affidavit of woman with him at the time of his arrest who stated that the gun was hers and was not stolen, which contradicted the movant's sworn testimony that he was guilty); *cf. U.S. ex rel. McLaurin v. McCann*, No. 1:07-C-1705, 2007 WL 3446496, at *9 (N.D. Ill. Nov. 16, 2007) (finding affidavits were not newly discovered evidence where any such testimony could have been presented at trial.

IV.    Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Angela Brady-Williams's motion to vacate her sentence [Doc. 155] be **DENIED WITH PREJUDICE**.

V.    Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant has not demonstrated ineffective assistance of counsel or actual innocence. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 16th day of September, 2024.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE